**SO ORDERED.**

**SIGNED this 23 day of April, 2007.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

PUBLISHED

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **ROBERT CRAWFORD SHAHAN,** | ) | **Case No. 06-11638** |
| | ) | **Chapter 13** |
| | ) | |
| Debtor. | ) | |

### MEMORANDUM OPINION

Debtor Robert Shahan filed this chapter 13 case on August 31, 2006.[1] His wife, Debra, did not file a petition. Both Robert and Debra are employed however, and he reported Debra's income on Form B22C, the means test form for chapter 13 debtors.[2] The Trustee objected to confirmation of Robert's plan on the grounds that he does not offer to pay his unsecured creditors all of his

---

[1] Debtor filed his chapter 13 plan the same date. Dkt. 3.

[2] Form B22C, line 1, column B.

1

projected disposable income for five years.[3] The Trustee bases her objection on several deductions and adjustments taken on Form B22C[4] by Robert in respect of Debra's income. The Court heard testimony in this matter, received the exhibits of the Trustee and the debtor, and heard oral argument from counsel.[5]

At issue here are three questions about how the means test imposed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), and made applicable to chapter 13 as the manner in which a debtor's projected disposable income is determined, treats the income of a non-debtor spouse. The three questions are as follows. First, to what extent is debtor entitled to a "Marital Adjustment" for the non-filing spouse's income "not regularly contributed to the household expenses?"[6] Second, are future debt payments on secured claims for which only the non-filing spouse is liable deductible as "Deductions for Debt Payment?"[7] Third, may the non-filing spouse's payments for support of her college-aged daughter, for recreation and miscellaneous personal expenses, and for loan repayments to her family be deducted as "Additional Expense Claims?"[8] After careful consideration of the evidence and review of the statutory language contained in 11 U.S.C. § 101(10A), § 707(b)(2), and § 1325, the Court answers these queries as

---

[3] 11 U.S.C. § 1325(b)(1)(B).

[4] Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

[5] Debtor was represented at trial by William H. Zimmerman, Jr. of Wichita. The Chapter 13 Trustee, Laurie B. Williams, appeared pro se.

[6] Form B22C, line 19.

[7] Form B22C, line 47.

[8] Form B22C, line 59.

2

follows.

### Jurisdiction

Confirmation of a chapter 13 plan is a core proceeding over which the Court has subject matter jurisdiction.[9]

### Introduction

The § 707(b) means test is the heart of the BAPCPA reforms.[10] It is aimed at assuring that every debtor who has the ability to pay something to his unsecured creditors is required to do so, either by mandating that his chapter 7 liquidation case be dismissed or by shunting him to chapter 13 where he can arrange his affairs so that some payment can be made to his creditors over the life of the chapter 13 plan. Rather than rely on the bankruptcy judges' subjective exercise of their discretion, Congress imposed national and regional standards on what a debtor may deduct as expense from his income to determine what he can pay. Many of these standards are based upon applicable IRS collection standards and not the actual income and expense of the debtors.[11] The BAPCPA amendments extend to chapter 13 and employ the same standards as a means to determine the extent of the debtor's disposable income, *i.e.* what must be paid under the plan to his unsecured creditors.[12] Disposable income was formerly defined as that amount of debtor's income remaining after the debtor paid his reasonable and necessary living expenses for the support of debtor and his

---

[9] 28 U.S.C. § 157(b)(1) and (b)(2)(L) and § 1334(b).

[10] 11 U.S.C. § 707

[11] The deductions and adjustments at issue here are not derived from the IRS national and local standards, but are based upon actual expenses.

[12] 11 U.S.C. § 1325(b)(1)(B).

3

dependents, an amount determined by examining Schedules I and J.[13] It is now defined as the debtor's "current monthly income received by the debtor,"[14] less amounts reasonably necessary to be expended for the maintenance or support of the debtor or debtor's dependents as determined "in accordance with" 11 U.S.C. § 707(b)(2)(A) and (B), provided the debtor's current monthly income exceeds the median income of a household of the same size in the state where the debtor resides.[15] Debtors disclose their current monthly income and expenses on Form B22C and both the creditors and the Trustee use these disclosures to determine whether the debtor is proposing to pay that which is required under § 1325(b)(1)(B) – all of debtor's projected disposable income during the applicable commitment period of three to five years.[16]

---

[13] 11 U.S.C. § 1325(b)(2)(A) (2004)

[14] Current monthly income is now specifically defined by 11 U.S.C. § 101(10A) as an average figure derived from the six month pre-petition period, and may not be a "real-time" figure if the debtor's employment status or income has changed since that six-month period.

[15] *See* 11 U.S.C. §1325(b)(2)(A)(I) (defining "disposable income" for purposes of § 1325(b)) and 11 U.S.C. § 1325(b)(3) (deferring to § 707(b)(2)(A) and (B) to determine "amounts reasonably necessary" for an above median income debtor). 11 U.S.C. § 1325(b)(4) determines the "applicable commitment period."

[16] Considerable controversy has arisen since the enactment of BAPCPA whether Form B22C exclusively governs the calculation of "projected disposable income" under § 1325(b)(1)(B) or whether the courts may also consider Schedule I and J. *See In re Kibbe*, ___ B.R.___ , 2007 WL 512753 (1st Cir. BAP Feb. 20, 2007) (Where a debtor's CMI is substantially the same as debtors actual current income, the projected disposable income inquiry begins and ends with Form B22C); *In re Edmondson*, ___ B.R. ___, 2007 WL 656457 (Bankr. D. N.M. Mar. 5, 2007) (In determining projected disposable income, above median income debtors are restricted to the expenses proscribed by the IRS standards on Form B22C, but in computing the income side, the court may consider debtors' actual income as reported on Schedule I and is not limited to the historical average income represented by CMI on Form B22C); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006) (The number resulting from Form B22C is a starting point; the statute's reference to "projected" disposable income is a forward looking concept and therefore it is appropriate to consider actual current income where there has been a substantial change in circumstances and actual current income is not commensurate with Form B22C's number.); *In re Hanks*, ___ B.R. ___, 2007 WL 60812 (Bankr. D. Utah, Jan. 9, 2007) (Form B22C is dispositive

4

Facts

The current case presents the situation where Robert is an above median income debtor since the current monthly income on Form B22C exceeds the median family income for a household size of two in the State of Kansas and requires a 5 year commitment period.[17] Under Robert's plan, he proposes to pay $450 per month. He has scheduled approximately $33,000 in unsecured claims. He has scheduled two secured claims, one for wedding rings treated as fully secured at $1,660 and one for a vehicle valued at $5,000. The remaining secured claims relate to a vehicle and homestead owned (and owed) solely by Debra. Robert and Debra were married approximately two years ago. Debra's 21 year old daughter from a previous marriage, who attends college at Wichita State University and works part-time, moved in with Debra and Robert in September, 2006 and continues to live with them; she is not listed as a dependent nor included in the household size claimed by Robert.[18]

On Form B22C, line 19, Robert claimed a "marital adjustment" of $706.19 which Debra testified represented withholding from her paychecks. On line 47, Robert deducted Debra's future payments on her secured debt on her car and her home totaling $885.18. On line 57, Robert claimed as an additional deduction from current monthly income a total of $415.00 comprised of a $100

---

with respect to an above-median income debtor's required return to general unsecured creditors even though debtors' current income was substantially less than their CMI shown on Form B22C.). In the case at bar, debtor does not contend that his actual current income differs substantially from his CMI on Form B22C and therefore, the Court confines its analysis to Form B22C and the appropriate deductions and adjustments for "amounts reasonably necessary" to be expended for the maintenance and support of debtor and his dependents under § 1325(b)(3) and § 707(b)(2)(A) and (B).

[17] *See* Form B22C, lines 15-17. 11 U.S.C. § 1325(b)(4).

[18] *See* Schedule I and Form B22C, line16.

5

monthly expense for Debra's recreation and miscellaneous personal expenses, a $100 monthly loan repayment by Debra to family members, $15 for tax preparation, and $200 monthly assistance by Debra to her college-aged daughter for school expenses, groceries and car expenses. The Trustee objected to these deductions and adjustments.[19] She complained that there was no basis disclosed for the marital adjustment and objected to the unsecured family loan repayment. The Trustee also objected to the $885 deduction for Debra's house and car payment, questioning whether this deduction was a duplication of the marital adjustment.

Current Monthly Income (CMI) and Marital Adjustment on Line 19

In means test analyses and Form B22C everything begins with current monthly income (CMI). CMI is defined in § 101(10A) as the average monthly income from all sources that the debtor receives that is derived during the six month period ending on the last day of the month preceding the date of filing, if the debtor files his schedule of current income with the petition (Schedule I) under § 521(a)(1)(B)(ii).[20] This amount includes "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ."[21] Stated another way, if a debtor's non-filing spouse has income, that portion of the spouse's income not dedicated to paying household expenses is deducted from CMI. This deduction is effected on Line 19 of Form B22C as a "marital adjustment" for amounts "not regularly contributed" to the household expenses.[22] This has the effect of reducing the debtor's disposable

---

[19] Dkt. 13.

[20] § 101(10A)(A)(I).

[21] § 101(10A)(B).

[22] *See In re Hall*, Slip Op. 2007 WL 445517 at *3, n. 2 (Bankr. C.D. Ill. Feb. 12, 2007) (The marital adjustment at line 19 of Form B22C is the proper way to identify the portion of a

6

income for purposes of § 1325(b)(2), thereby reducing what he should pay unsecured creditors if he is an above-median debtor.

In Robert's case, he took a $706.19 marital adjustment on Line 19. Debra testified that this figure represents her withholding from her paycheck.[23] Debra also testified that she is a salaried employee and her monthly income is stable. Robert is an above-median debtor. The Court finds that Debra's withholding is not dedicated to household expense and is justifiably deducted on Line 19 as a marital adjustment.[24]

<u>Non-Debtor Deductions for Secured Debt Payments, Line 47</u>

Line 47 provides for the deduction of future payments to be made on secured debts. The Trustee questions Robert's listing of two payments, one to Emprise Bank and the other to Wells Fargo.[25] These total $885.18 per month and relate to debts of Debra's alone, secured by the home Debra and Robert inhabit and Debra's vehicle. Robert is not a titled owner on either the home or vehicle.

The statutory predicate for deducting debt payments from disposable income resides in § 707(b)(2). This subsection matters because, as noted above, it contains the allowable expenses and

---

non-filing spouse's income that is not regularly contributed to the household expenses and which should not be included in calculating a debtor's disposable income).

[23] The Court notes that it did not receive into evidence, a paystub from Debra's employment and on Schedule I, Robert listed her gross monthly income as $2,900 with payroll deductions of $560.50 ($520.50 of payroll taxes and social security and $40 for a cafeteria plan contribution). The Trustee, however, does not question the discrepancy in the withholding figure and the Court will accept Debra's testimony and withholding figure as true.

[24] *See In re Quarterman*, 342 B.R. 647, 650 (Bankr. M.D. Fla. 2006).

[25] Initially, the Trustee questioned whether this deduction duplicated the marital adjustment on Line 19. *See* Dkt. 13. At trial, the Trustee indicated she was satisfied that the deduction on Line 47 did not duplicate the marital adjustment on Line 19.

7

calculus for determining the amount of debtor's disposable income.  Subsection (b)(2)(I) provides that the court shall presume that abuse exists if the debtor's CMI, "reduced by the amounts determined under clauses (ii), (iii), and (iv)," and multiplied by 60 is not less than the lesser of 25 per cent of the debtor's non priority unsecured claims or $6,000, whichever is greater, or $10,000. Clause (iii) provides that the debtor's average monthly payments on account of secured debt is the total of all amounts scheduled as due in the 60 months after filing and any additional payments that would be necessary for the debtor in chapter 13 to maintain possession of a residence or vehicle, divided by 60.  The Court notes the precise wording of clause (iii) points to the debtor's payments alone, to wit: "The *debtor's* average monthly payments on account of secured debts . . . ."[26]

The Emprise and Wells Fargo payments are not Robert's obligations; they are Debra's alone. Based on the plain language of the statute, the Court does not believe that future secured debt payments by a non-filing spouse are deductible on Line 47.  Neither does it appear proper for the debtor to claim an ownership expense for a vehicle owned by a non-debtor spouse on Line 29.  In this case, Robert has declared that he has no interest in Debra's vehicle, yet he has claimed the ownership expense after netting out the scheduled payment as required by the statute.  This deduction is available under § 707(b)(2)(A)(ii)(I) for the "*debtor's* applicable monthly expense amounts . . . for the debtor . . . and the spouse of the debtor *in a joint case* . . . ."  This simply does not apply to the non-filing spouse.

This conclusion may be surprising because it could have the effect of vastly increasing a similarly-situated debtor's disposable income so that he must necessarily call upon his non-filing spouse's income to make his plan payments.  The answer lies in concluding that the non-filing

---

[26] Emphasis added.

8

Case 06-11638    Doc# 31    Filed 04/23/07    Page 8 of 13

spouse's car and house payments on debts not secured by assets of the estate or that are not claims *against the debtor* are not in fact amounts paid on a regular basis for household expenses as referenced in § 101(10A) and, therefore, are deductible on Line 19 as a marital adjustment.[27] At first blush, this seems ludicrous: Robert lives in the house and presumably rides in or sometimes drives the car and both assets are undoubtedly a part of his "household." Nevertheless, this may be the only way to implement the plain language of the Act. To reach another conclusion would dictate that a spouse who does not file with her husband is actually worse off than a spouse who does. Under the Trustee's theory, Debra would be required to contribute less of her income had she filed a joint case with Robert, even though she appears to have no need for bankruptcy relief and Robert is solely liable on the debts listed in this case. If the aim of BAPCPA was to reduce bankruptcy filings, this can hardly be what the Congress had in mind.

For these reasons, the Court disallows the Line 47 deductions for Debra's secured debt payments to Emprise Bank and Wells Fargo as well as the Line 29 ownership allowance as to her vehicle, but suggests that the marital adjustment on Line 19 be increased in the amount of $885.18, the sum of Debra's two payments.

<u>Non-Debtor Deductions for Additional Expenses, Line 59</u>

The Trustee's final objection to Robert's disposable income calculation arises out of his $415 deduction as "Additional Expense Claims," Debra's recreation and miscellaneous personal expenses, an unsecured loan Debra is repaying to her family members, a monthly stipend Debra pays to assist her college-aged daughter, and debtor's tax preparation expenses. It is this deduction with which

---

[27] *See In re Travis*, 335 B.R. 520, 527 (Bankr. D. Mich. 2006) (" If the non-filing spouse spends his/her income on his/her own expenses, those are legitimate deductions on Line 17 [Line 19 in a chapter 13 case], regardless of whether those expenses could also be generally categorized as household expenses.").

9

the Trustee takes greatest issue. Debra testified that her monthly recreation expenses consist of buying lunch with her friends at work, health club dues, going to movies, and other like expenses. They total $100. Her loan repayment to family also amounts to $100 and relates to loans she received from her parents and her sister over a period of years. Debra pays her and Robert's tax preparation fees which amount to $15 per month.[28] Finally, Debra pays her daughter $200 a month to help her daughter make ends meet as she works her way through college.

At trial, Robert introduced into evidence a spreadsheet that Debra testified she regularly maintains for her budget and which tends to support the $200 monthly expenditure claimed regarding her daughter.[29] During the six months since September, 2006, when Debra's daughter moved in with them, Debra paid about $1,254.99 in assistance for school-related items and other miscellaneous bills incurred by Julie. This same exhibit, however, does not support the $100 monthly loan repayment Debra makes to her family. For calendar year 2006, Debra made some monthly payments of $36 and $50. The spreadsheet includes a notation that Debra has not been able to make loan repayments since Julie moved in with her and Robert in September of 2006.[30] In the Court's view, this evidentiary deficiency is more than offset by Debra's additional expenditures for Julie for food and clothing (which are substantiated on Exhibit 1 but not claimed as an additional other expense) and therefore will allow the $100 monthly loan repayments claimed by Robert.

The statutory predicate for Line 59 is most likely § 707(b)(2)(A)(ii)(I) where it states that the "the debtor's monthly expenses shall be the *debtor's . . . actual* monthly expenses for the categories specified as Other Necessary Expenses [in the IRS Internal Revenue Manual] (Emphasis

---

[28] Robert and Debra filed a joint return last year.

[29] Debtor's Ex. 1.

[30] *Id.*

10

added)." Form B22C's instructions allow these expenses to be deducted if they are "required for health and welfare" of the family. That language parallels the criteria for their allowance contained in the Internal Revenue Manual.

The Internal Revenue Manual, Financial Analysis Handbook sets forth the categories of "other expenses" in Section 5.15.1.10.[31] These other expenses are allowed if they meet the necessary expense test – "they must provide for the health and welfare of the taxpayer and/or his or her family or they must be for the production of income." The categories listed in § 5.15.1.10 include: accounting and legal fees, child care, dependent care, certain education costs (e.g. continuing education costs), health care, life insurance, and telecommunication expenses.[32] Section 707(b)(2)(A)(ii)(I) references the Internal Revenue Manual for these other expenses and it enumerates some of the same categories of expenses: "[s]uch expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses . . . ."

Based upon the types of "other necessary expenses" identified in the Internal Revenue Manual, the Court concludes that Debra's recreation and loan payment expenses do not qualify as other necessary expenses as contemplated under § 707(b)(2).[33] Similarly, Debra's payments to her daughter do not qualify.[34] The Court cannot hold that these expenses do not qualify as household

---

[31] *See* Internal Revenue Manual, Financial Analysis Handbook § 5.15.1.10 available at http://www.irs.gov/irm/part5/ch15s01.html.

[32] *See* Form B22C, Part IV, Subpart B, lines 39-46.

[33] The Court also observes that § 707(b)(2)(A)(ii)(I) expressly excludes monthly expenses of the debtor for payment of debt. This provision would provide an alternative basis for disallowing Debra's repayment of her loans from family members as "other necessary expenses."

[34] *See In re Johnson*, 346 B.R. 256, 267-68 (Bankr. S.D. Ga. 2006) (Other necessary expenses under the means test must be actual, necessary and reasonable.); *In re Edmunds*, 350 B.R. 636, 645 (Bankr. D. S.C. 2006) (Other necessary expenses include certain tax expenses,

11

expenses necessary to the health and welfare of the debtor or his family and at the same time hold that they are included in "any amount paid by any entity . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . " as specified in § 101(10A).

Nor can the Court hold these expenses to be the expenses of a dependent of the debtor that would be included under § 707(b)(2)(A)(ii)(I). Robert, the debtor, made none of these expenditures. Debra's 21 year old daughter is not a dependent of the debtor. While Debra may be Robert's legal dependent, the specific inclusion in § 101(10A) of the parenthetical reference to a debtor's spouse in a joint case suggests that Congress did not intend to include a non-filing spouse's expenses in the amount of the non-filing spouse's income to be included in CMI.[35] Therefore, the Court today holds that while the recreation expenditures, loan repayments, and support of an adult child by the non-filing spouse are not deductible as other necessary expenses on Line 59, they are allowable as further marital adjustments under § 101(10A) and are therefore appropriate marital deductions from CMI on Line 19.[36] As there seems to be no cavil that tax preparation is a necessary and beneficial family expense, the Court holds it to be properly deductible on Line 59.

Conclusion

Confirmation of Robert's plan is therefore DENIED, but Robert is accorded thirty days from

---

health care costs, telecommunication costs, and mandatory payroll deductions.).

[35] *In re Quarterman*, 342 B.R. 647, 650-51 (Bankr. M.D. Fla. 2006) ("The parenthetical [reference in § 101(10A)] stating that, in a joint case, a debtor's current monthly income shall include the debtor's spouse's income suggests that, in a single case, the spouse's income is not included in the debtor's current monthly income; otherwise, the parenthetical would be superfluous.").

[36] *See In re Travis*, 353 B.R. 520 (Bankr. E.D. Mich. 2006) (Debtor's non-filing spouse could take marital adjustment for her expenditures on clothing and personal items; if non-filing spouse spends her income on her own expenses, they are legitimate deductions for purposes of the marital adjustment.).

the date this Order is entered on the docket in which to revise his Form B22C in conformity with

the forgoing opinion and to file an amended plan, if such be deemed necessary.

# # #